UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNELLY CORPORATION,
a/k/a MAGNA DONNELLY,

    Plaintiff,

Case No. 05-74444

HONORABLE ARTHUR J. TARNOW
MAGISTRATE JUDGE STEVEN PEPE

v.

GUARDIAN INDUSTRIES CORP.,
GUARDIAN AUTOMOTIVE CORPORATION,
GUARDIAN AUTOMOTIVE PRODUCTS, INC.,
GUARDIAN INDUSTRIES DISTRIBUTION
CENTER, INC., and GUARDIAN GLASS COMPANY,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO STAY (DKT. #92)**
**AND**
**ORDER STAYING THIS LITIGATION**

On May 18, 2007, Defendants Guardian Industries Corp., Guardian Automotive Corporation, Guardian Industries Corp., Guardian Automotive Corporation, Guardian Industries Distribution Center, Inc., and Defendants/Counter-Plaintiffs Guardian Automotive Products, Inc. and Guardian Glass Company (collectively, "Guardian"), filed a motion to stay this litigation pending the reexamination of all nine asserted Magna Donnelly ("Donnelly") patents, presently underway, by the United States Patent & Trademark Office ("USPTO") (Dkt. #92).[1] All pretrial

---

[1] The following are the nine patents in suit: United States Patent 5,551,197 ("the 197 patent"); United States Patent 5,704,173 ("the 173 patent"); United States Patent

1

proceedings have been referred (Dkt. #117). A June 13, 2007, hearing was held on Plaintiff's motion for contempt and Defendants' motion for stay. At that hearing it was ordered that Defendants provide a supplemental brief on their motion to stay, which incorporated the latest findings of the USPTO. Plaintiff were allowed to respond (Dkt. #128). Having heard oral arguments on Defendants' motion to stay and after reviewing both parties submissions, and supplemental submissions Defendants' motion is **GRANTED** and this litigation is stayed pending the reexamination of all nine asserted Donnelly patents, presently underway, by the USPTO.

**I.    BACKGROUND**

On November 11, 2005, Plaintiff sued Defendants, alleging infringement of U.S. Patent No. 5,551,197 (Dkt. #1). Plaintiff amended its complaint on March 15, 2007, to assert U.S. Patent Nos. 5,704,173, 5,853,895, 5,966,874, 6,068,719, 6,128,860, 6,298,606, 6,319,344, and 6,871,450 (Dkt. #66). The nine patents-in-suit involve a series of bonded vehicular window assemblies and bonding methods. Plaintiff accuses Defendants of infringing nearly 200 claims of nine patents by willfully manufacturing automotive windows that infringe upon Plaintiff's patents and are thereby causing Plaintiff a loss of sales and undermining Plaintiff's competitive position.

In addition to suing Defendants, on October 17, 2006, Donnelly sued Pilkington North America, Inc. ("Pilkington") in a separate lawsuit in the Western District of Michigan, accusing

---

5,853,895 ("the 895 patent"); United States Patent 5,966,874 ("the 874 patent"); United States Patent 6,068,719 ("the 719 patent"); United States Patent 6,128,860 ("the 860 patent"); United States Patent 6,298,606 ("the 606 patent"); United States Patent 6,319,344 ("the 344 patent"); and United States Patent 6,871,450 ("the 450 patent").

Pilkington of infringing the same nine patents asserted in the instant litigation. On January 26, 2007, Pilkington filed with the USPTO requests for reexamination of each of the nine patents. The requests asked the USPTO to reexamine the patents on the grounds of prior art not considered by the USPTO during the original prosecution of the patents. On January 29, 2007, Pilkington filed a motion to stay its litigation with Donnelly pending the outcome of its requests for reexamination of the nine patents. The Western District granted Pilkington's motion to stay on March 12, 2007, based solely on the requests for reexamination that had been filed, finding that "issuance of a stay pending reexamination by the PTO will promote efficient and expeditious disposition of the claims, will conserve judicial resources, and will ensure that adjudication is informed by the expertise of the PTO" without "prejudice[ing] [Donnelly] in a way not fully remediable by monetary compensation." *Magna Donnelly Corp. v. v. Pilkington N. Am., Inc.*, No. 4:06-CV-126, 2007 WL 772891, at *6 (W.D. Mich. Mar. 12, 2007).

Between March 2, 2007 and April 6, 2007, the USPTO granted Pilkington's requests for reexamination for each of the nine patents.[2] Moreover, the USPTO explained, on a claim by claim basis and with respect to specific prior art references, how it has already identified prior art and prior art combinations that raise "a substantial new question of patentability" affecting all claims of each patent (*See*, Dkt. #92, Ex. B-I, N). For example, with respect to the '197 patent, the USPTO has indicated that the claims are invalid in view of the following prior art references:

---

[2] The requests for reexamination were granted on the following dates: March 2 ('173 patent), March 7 ('874 patent), March 16 ('606 patent), March 16 ('450 patent), March 21 ('895), March 22 ('719), March 22 ('344), March 30, ('860), and April 6 ('197).

**The '197 Patent**: 71 Claims (Dkt. #92, Ex. N, '197 Reexamination Order)

| Claims | Prior Art |
| --- | --- |
| 1, 3, 6, 9, 10, 12-14, 19, 20, 40, 43, 45, 46 | Farmont '621 |
| 2 | Farmont '621, Kumert (U.S. 4,582,738) |
| 4, 5, 8, 11, 14-28, 34, 35, 37, 38, 44 | Farmont '621, Rothe |
| 30-33, 36, 39, 42, 47 | Farmont '621, Rothe, Morgan |
| 7, 48-50, 56, 57, 64-66 | Farmont '621, Morgan |
| 51-53, 55, 58-63, 67-69, 71 | Farmont '621, Morgan, Rothe |
| 54, 70 | Farmont '621, Morgan, Rothe, Bachmann |
| 29 | Farmont '621, Tanabe |
| 41 | Tanabe |
| 7, 21, 27, 44, 48-50, 56, 57, 64-66 | Farmont '621 |
| 4, 5, 8, 22-26, 28, 31-36, 42, 51-53, 55, 58-63, 67-69, 71 | Farmont '621, Rothe, Tanabe |
| 47 | Farmont '621, Rothe, Tanabe, Farmont '396 |
| 54, 70 | Farmont '621, Rothe, Tanabe, Bachmann |
| 34 | Farmont '621, Tanabe |
| 11, 15, 16, 37, 38 | Tanabe |
| 1, 3, 6, 7, 9, 10, 14, 19-21, 27-29, 39 | Tanabe, Farmont '621 |
| 17, 18 | Tanabe, Rothe |

Because the nine patents before the USPTO on reexamination are the subject of the current litigation, the USPTO will conduct these reexaminations with "special dispatch," meaning the reexaminations are on an accelerated schedule and take priority over other reexaminations. *See*, MPEP § 2261; *Ethicon v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). Considering the USPTO has implemented a policy of concluding all reexaminations in less than 2 years, the USPTO could very well adjudicate Pilkington's "special dispatch" reexaminations in less than a year (*See*, Dkt. #92, Ex. O, March 4, 2005, Town Hall Meeting on Patent Reform, pp. 59-60) ("[B]y the end of 2005, the Office will set a defined time period for all future *ex parte* reexamination proceedings to be completed before the examiner, a period that will be less than

4

the two years we achieved this year.").

The reexamination proceedings before the USPTO for all nine patents appear to be well underway. In the months since the requests for reexamination were filed, the following activities have taken place at the USPTO (Dkt. #146, p. 1):

1. The USPTO ordered reexaminations for all 519 claims of the nine patents after finding the newly cited prior art raised a substantial new question of patentability for each claim.

2. The PTO issued first office actions for six of the nine patents at issue in this litigation, **rejecting all claims of the six patents** (Dkt. #183, p. 4).

3. Plaintiff held an interview with the Examiner to discuss the '173 patent in view of the prior art and proposed 5 **new** claims. During the interview, the Examiner maintained his rejection for all 25 original claims.

4. Plaintiff responded to the first office action for the '173 patent by amending all 25 original claims to add new substantive limitations and submitting 26 **new** claims for consideration.

Fact discovery closed on June 29, 2007, and the parties formally entered the expert discovery, dispositive motion and *Markman* phases of the case. While the parties have produced documents, responded to interrogatories and requests for admissions, and conducted several depositions, substantial fact discovery on all fronts remains and summary judgment briefs are due November 2, 2007, though that date will need modification (Dkt. #68). No pretrial conference or trial dates have been set. The parties have submitted a stipulated order requesting that the Court vacate the current scheduling order and conduct a status conference to establish a new scheduling order within a reasonable time after a denial of Defendants' motion or after the stay is lifted if Defendants' Motion is granted (Dkt. #181).

II. ANALYSIS

    A. <u>**Legal Standards**</u>

"Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)); *accord*, *Deluca v. Blue Cross Blue Shield of Michigan*, 2007 WL 715304, at *1 (E.D. Mich. 2007) (this "broad discretion and inherent power" includes "the power to stay a matter pending resolution of independent proceedings which bear upon the case at hand") (internal quotations and citations omitted). Further, limitations on pretrial discovery are appropriate where claims may be dismissed "based on legal determinations that could not have been altered by any further discovery." *Muzquiz v. W.A. Foote Memorial Hosp., Inc.*, 70 F.3d 422, 430 (6th Cir. 1995).

In patent cases, "courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon*, 849 F.2d at 1426-27 (Fed. Cir. 1988) (citations omitted). "[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *see also, Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000) ("Courts have routinely stayed infringement actions pending the outcome of reexamination proceedings."); *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 WL 149994, at *2 (N.D. Cal. May 5, 1993) ("[T]here is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination."). "Courts have noted that issuing a stay [pending resolution of a reexamination] has many advantages, including the narrowing or elimination of issues, the alleviation of discovery problems, the encouragement of settlement, the

benefit to the court of PTO expertise, the simplicity of introducing the PTO record as evidence at trial, and the reduction of costs for both the parties and the court." *Magna Donnelly*, 2007 WL 772891, at *2.

In deciding whether to stay litigation pending the outcome of a reexamination proceeding, courts have considered the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Gonnocci v. Three M Tool & Machine, Inc.*, 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. Oct. 7, 2003). [3]

### B.     Factual Analysis

Reexamination of patent validity is allowed under 35 U.S.C. § 301 et seq. A reexamination may be requested at any time by any person upon showing the existence of "prior art," "consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." 35 U.S.C. §§ 301, 302. Within three months of the request, the USPTO must determine "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications." 35 U.S.C. § 303(a). Reexamination, if granted, may result in an order cancelling the patent as unpatentable, confirming the patent, or

---

[3] *See also, Akzenta*, 464 F. Supp 2d at 484; *IMAX Corp. v. In-Three, Inc*., 385 F. Supp .2d 1030, 1032 (C.D. Cal. 2005); *Lectrolarm*, 2005 WL 2175436, at *3; *Gonocci*, 2003 U.S. Dist. LEXIS 24423 at *7; *Xerox Corp. v. 3Com Corp*., 69 F. Supp.2d 404, 406-07 (W.D. N.Y. 1999).

amending the patent. *See,* 35 U.S.C. § 282; *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C.*, LLC, 464 F. Supp.2d 481, 483 (D. Md. 2006).

"The primary purpose of the reexamination procedure is to 'eliminate trial of that issue (when the [patent] is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceedings).' " *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.1983)); *Gladish v. Tyco Toys, Inc.*, 1993 WL 625509, 29 U.S.P.Q.2d 1718 (E.D. Cal. Sept.15, 1993). The intent of Congress in establishing the reexamination procedure was to provide an inexpensive and rapid resolution that would provide the federal courts with the expertise of the USPTO in resolving patent claims. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir.1985). Courts have noted that issuing a stay has many advantages, including the narrowing or elimination of issues, the alleviation of discovery problems, the encouragement of settlement, the benefit to the court of USPTO expertise, the simplicity of introducing the USPTO record as evidence at trial, and the reduction of costs for both the parties and the court. *See, Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, No. 03-2330, 2005 WL 2175436, at *2 (W.D. Tenn. Sept.1, 2005); *Ralph Gonocci Revocable Living Trust v. Three M Tool & Machine, Inc.*, 2003 U.S. Dist. LEXIS 24423, 68 U.S.P.Q.2D (BNA) 1755 (E.D. Mich. Oct.7, 2003) (quoting *Emhart Indus. v. Sankyo Seiki Mfg. Co. Ltd.*, 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2D 1889, 1890 (N.D. Ill. 1987)); *see also Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274, 56 U.S.P.Q.2D 1633, 1635 (S.D. N.Y. 2000).

As noted above, the decision whether to issue a stay rests within the sound discretion of

the district court. *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y.1996); *Gonocci*, 2003 U.S. Dist. LEXIS 24423 at *5 (citing *Gould*, 705 F.2d at 1342.). Defendants argue that, in the present case, all three factors noted in *Gonnocci* support granting of a stay. The Court finds that, on balance, the factors decidedly favor a stay.

### *1. Simplification of Issues*

Defendants argue that a stay of litigation pending determination by the USPTO will simplify or moot the issues before this Court. In addition, the grant of a stay will benefit the Court by ensuring the availability of the USPTO's expertise and experience to resolve the remaining issues. Further, Defendants argue that the USPTO's reexamination is likely to prevent either the parties or the Court from litigating claims that may be declared void by the USPTO. For all these reasons, Defendants contend that both efficiency and judicial economy favor staying the litigation.

In response, Plaintiff contends that, because only 12% of reexamination proceedings result in the invalidation of a patent and because Plaintiff views the grounds for reexamination as weak, the litigation, in all likelihood, will not be mooted by the USPTO's reexamination (Dkt. #116, p. 15). Plaintiff acknowledges that in 59% of the cases, some claims are changed during reexamination, yet, it argues that, because trial will still likely be necessary and because invalidity of the patents will continue to be an issue, the reexamination procedure will not simplify the case.

Yet, the mere fact that reexamination is not likely to dispose of the case completely does not mean that issues will not be simplified by reexamination. The statistics recited by both parties indicated that patent claims are invalidated or modified in over 70% of reexamination

proceedings conducted. *Id*. The cases cited by the parties suggest that reexamination generally, though not always, simplifies litigation. *See, e.g., Gonocci*, 2003 U.S. Dist. LEXIS 24423 at 13 (noting that, even if issues are not eliminated, the USPTO's decision will be admissible and will carry a presumption of validity); *Softview*, 2000 U.S. Dist. LEXIS 11274 at *10 (emphasizing the significance of USPTO's expertise as factor in simplification); *IMAX*, 385 F. Supp.2d at 1032 (recognizing that stay will always simplify the issues to some extent by narrowing discovery and providing USPTO expertise, even if in particular case, other claims are so likely to predominate that simplification is not sufficient). The cases cited by Plaintiff to the contrary typically rest on the particular facts and stage of the litigation in issue, where the potential for simplification is small. *See, e .g., Nexmed Holdings, Inc. v. Block Inv., Inc.*, No. 2:04-cv-288, 2006 WL 149044, at *1 (D. Utah Jan.19, 2006) (noting that, because the defense of invalidity was waived and the case was at late stage of proceedings, stay would not simplify issues); *Cognex Corp. v. Nat'l Instruments Corp*., No. Civ. A. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) (in light of late stage of litigation and existence of large number of claims not linked to the patent infringement claim, reexamination would not significantly simplify the case); *Gladish*, 1993 WL 625509, at *2 (because USPTO does not consider the type of evidence that predominates in the case, a trial considering such evidence would remain necessary).

Moreover, courts routinely have recognized the benefits to courts of having USPTO expertise and experience to inform patent trial proceedings. *See, Bausch & Lomb*, 914 F. Supp. at 953 ("Because the USPTO is considered to have expertise in deciding issues of patentability many courts have preferred to postpone making final decisions on infringement until the USPTO rules on issues before it.") (citations omitted). Congress itself has recognized that "an advantage

10

of the reexamination process is that it allows the validity of the patent to be 'tested in the Patent Office where the most expert opinions exist and at a much reduced cost.'" *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir.1988)) (quoting H. Rep. 1307(I), 96th Cong., 2d Sess. 4, reprinted in 1980 U.S.C.C.A.N. 6460, 6463; *see also Patlex*, 758 F.2d at 602; *Gould*, 705 F.2d at 1342).

It is determined that in this case that reexamination is likely to simplify both the issues remaining before the Court and the trial on those issues. Since May 17, 2007, the USPTO has issued first office actions for six of the nine patents, **rejecting all claims** of each of the six patents. The following is a summary of the first office actions on four of the patents reviewed:

1. On May 17, the USPTO issued a first office action **rejecting all 25 claims** of the '173 patent.
2. On May 30, the USPTO issued a first office action **rejecting all 23 claims** of the '874 patent.
3. On June 8, the PTO issued a first office action **rejecting all 34 claims** of the '606 patent.
4. On June 8, the PTO issued a first office action **rejecting all 156 claims** of the '450 patent.

(Dkt. #124, Exs. A & B; Ex. 2, '606 Office Action; Ex. 3, '450 Office Action).

By all parties' representations, it is statistically likely that reexamination will result in at least some modification of the claims, even if no patents are canceled. And both discovery and trial on the matter will be simplified by having the opinion and expertise of the USPTO before the Court. *See, e.g., Gonocci*, 2003 U.S. Dist. LEXIS 24423 at 13 (noting that the USPTO's decision will be admissible and will carry a presumption of validity). Moreover, most of the issues pending in the litigation are closely related to patent validity. *Cf. Cognex*, 2001 WL 34368283, at *2 (finding little simplification where case contained many claims not related to the patent infringement claim, including copyright and trademark infringement and unfair competition). Defendants affirmatively defend the case on the grounds of patent invalidity and

11

they have filed a counterclaim on that issue (Dkt. #5, p. 8).  *Cf. Nexmed*, 2006 WL 149044, at *1.  Thus, this first factor favors issuance of a stay.

2.  *Stage of the Litigation*

Defendants assert that a stay is particularly appropriate at this early stage of litigation, where neither party has fully conducted fact discovery.  Moreover, expert discovery, claim construction briefing, a *Markman* hearing, dispositive motions, and a pretrial order all remain.  *See, e.g., GPAC, Inc. v. D.W.W. Enterprs., Inc.*, 144 F.R.D. 60, 64 (D.N.J. 1992) (finding a case pending for 16 months where the parties had exchanged and answered interrogatories and where four depositions had been taken was still in the early stages of litigation).  Thus, all of the expensive activity for experts and *Markman* has not yet begun, and it does not make sense to begin it with a reexamination pending.  "It would be a serious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding." *Softview*, 56 U.S.P.Q.2d at1636; *see also, Card Tech. Corp. v. Datacard Corp.*, Civ. No. 05-2546, 2007 WL 551615, at *7 (D. Minn. Feb. 21, 2007) ("The usual reason for denying such a stay is that the case has progressed through the bulk of pretrial proceedings and is scheduled for trial shortly.").

Plaintiff argues that a stay should be denied in part because discovery closed on June 29, 2007, thereby implying that this case is further along then Defendants contend.  While the parties have produced documents, responded to interrogatories and requests for admissions, and conducted several depositions, substantial fact discovery on all fronts still remains before summary judgment briefs could be submitted.  No pretrial conference or trial dates have been

12

set. Indeed, Plaintiff's efforts to depose Chris DeFrayne of Dow Automotive on August 22, 2007, prompted issuance of a Protective Order until such time as the Court rendered its decision on Defendant's motion to stay this litigation.[4] In addition, both parties have submitted a stipulated order requesting that the Court vacate the current scheduling order, and hold a status conference with the parties within a reasonable time after a denial of Defendants' motion or after a stay if Defendants' Motion is granted to establish a new scheduling order (Dkt. #181).

The Court concludes that the stage of the litigation weighs strongly in favor of granting Defendants' motion. *See Gonocci*, 2003 U.S. Dist. LEXIS 24423, at *12 (granting stay where action pending less than a year); *Softview*, 2000 U.S. Dist. LEXIS 11274, at 9 (granting stay, despite fact that case had been pending three years and substantial activity had occurred, because much remained to be done before trial); *ASCII Corp.*, 844 F. Supp. at 1381 (noting that case had been pending less than one year); *cf. Akzenta*, 464 F. Supp.2d at 484 (finding that stage-of-litigation factor did not weigh heavily either way where some discovery had occurred but there existed a dispute about what remained). This case is not sufficiently along to make issuing the stay inefficient and this second factor should not be a bar to the stay.

### 3. *Prejudice to Non-Moving Party*

Plaintiff asserts that it will be prejudiced by issuance of a stay during the pendency of the reexamination proceedings. Plaintiff has filed an extensive affidavit by Niall R. Lynam, Ph.D., Plaintiff's Senior Vice President and Chief Technical Officer, supporting three central claims of prejudice over time (Dkt. #116, Ex. P). First, Plaintiff contends, Defendants' past patent infringements already have jeopardized Plaintiff's hardware bonding business, thereby forcing

---

[4] Plaintiff subsequently agreed to postpone that deposition.

Plaintiff to eliminate 25 salaried staff and twenty hourly paid workers (Dkt. #116, p. 18). Second, Plaintiff argues that it is unable to compete with manufacturers that do not respect its patents because, since it does not manufacture the glass, its proprietary technology is its principal competitive advantage. Third, Plaintiff argues that its demand will have little or no meaning if, by the time the reexamination process is concluded, competitors including Defendants have scooped its remaining hardware bonding business.

Plaintiff' claims that it will be prejudiced in ways not remediable by monetary damages is not persuasive. First, despite Plaintiff's claims that delay would cause irreparable damage to its business, Plaintiff has not sought a preliminary injunction in this matter. In addition, Plaintiff admits it previously has licensed its patents-in-suit (Dkt. #124, Ex. C, Lynam Aff. ¶ 12). Even accepting Plaintiff's claims that the license it issued was limited and does not apply to the RT Window Program, licensure to others suggests that the manufacture of Plaintiff's products by others has not been treated by Plaintiff as imminently threatening to its window business.

Plaintiff argues that courts have recognized that reexamination proceedings can take years to resolve. *See, IMAX*, 385 F. Supp.2d at 1033 (noting prejudice in a delay of potentially two years); *St.-Gobain Perf. Plastics. Corp. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252 (D. Mass. 2006) (noting that the average reexamination takes 21 months). Plaintiff therefore contends that it will have lost its competitive position by the time reexamination is complete.

While reexamination procedures undoubtedly take some time to resolve, the USPTO is required to decide whether to grant the requests for reexamination within three months. Indeed, the USPTO has already issued first office actions for six of the nine patents at issue in this

14

litigation, rejecting all claims of the six patents (Dkt. #183, p. 4). Moreover, while courts have found that the average reexamination procedure takes over one-and-one-half years, *see Akzenta*, 464 F. Supp.2d at 485, reexamination cases involved in litigation are required to "be conducted with special dispatch within the [PTO]." 35 U.S.C. § 305. Section 2261 of the Manual of Patent Examining Procedure (MPEP) more specifically defines the statutory requirement: Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases. MPEP 2261.

Plaintiff next represents that it will be damaged during certain automakers' bidding processes likely to occur in 2007 to 2008 because the stay will prevent a judicial determination during that time. It asserts that its Engineered Glass Division may have to close if these contracts are lost (Dkt. #116, p. 19). Yet, as previously noted, Plaintiff has not sought to expedite this action or to obtain a preliminary injunction. Pretrial preparation, trial and final resolution in this Court would not likely be completed in time to satisfy the 2007/2008 deadline upon which Plaintiff rests for its claim of prejudice. As a result, Plaintiff's claim of prejudice does not warrant denying the stay pending reexamination.

Finally, if Plaintiff's patents are ultimately found to be valid and infringed, Defendants will be responsible to Plaintiff for damages, including possible treble damages, for all of the infringing products it has sold. *See, Softview*, 2000 U.S. Dist. LEXIS 11274, at *10-11 (citing 35 U.S.C. § 284). In addition, as the *Plinkington* Court noted, a stay would not irreparably prejudice Plaintiff as a whole.

> Despite Plaintiff's representations that up to 200 jobs will be lost because Plaintiff's divisions operate on an entrepreneurial basis and must justify program continuations, it is apparent from Plaintiff's own exhibits that the alleged infringements and delay are unlikely to have a significant prejudicial effect on the company. Plaintiff is a

15

> multinational corporation with $23 billion in sales in 2005. (Pl. Resp. to Motion to Stay, Ex. 1-B at 4.) Of those total sales, $1.5 billion (6.5%) were in the mirror and window division. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) Window sales constituted only 20% of the mirror and window business. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) By Plaintiff's own evidence, window sales amount to only 1.3% of Plaintiff's total sales, and the hardware bonding business represents only some fraction of total window sales. Plaintiff has nine "bonded hardware" programs. (Pl. Resp. to Motion to Stay, Ex. 1-B at 17.). As a result, it is clear that the RT contract would represent only a small fraction of Plaintiff's total business. The Court is unpersuaded by either Lynam's affidavit or Plaintiff's own prior conduct that delay will result in the claimed irreparable prejudice.

*Plinkington*, 2007 WL 772891, at *6.

A stay of this litigation pending the outcome of the reexaminations of the patents-in-suit will not unduly prejudice or disadvantage Plaintiff. Rather, staying this litigation may well provide some advantages to Plaintiff. Plaintiff, like the Court and Defendants, will benefit from not having to engage in wasteful litigation, such as that described above, over claims that are likely to change or even cease to exist. Furthermore, although the parties have conducted part of the fact discovery for this case, this discovery will not prove wasteful should any of the claims survive reexamination. Remaining fact discovery, conducted post-stay, will be focused appropriately to the claims, if any, as they exist after the reexamination process is complete. And the expert discovery and claim construction stages, both of which are claim scope intensive, will not be done wastefully by waiting until after the reexamination process is complete.

Plaintiff will also benefit from staying this case until resolution of the reexamination proceeding if Plaintiff must reduce the number of asserted claims before trial, as Defendants have
asked the Court to require. If Plaintiff selects representative claims before the reexaminations are resolved, Plaintiff may choose claims that are invalidated before trial. Most likely, Plaintiff

16

will then want to select new claims for trial that will require more expert discovery and probably another claim construction hearing.  A stay will certainly reduce the risk that Plaintiff seeks to change its final claim set after significant work has been completed.

### III.     CONCLUSION

In sum, balancing all three factors, it is determined that issuance of a stay pending reexamination by the USPTO will promote efficient and expeditious disposition of the claims, will conserve judicial resources, and will ensure that adjudication is informed by the expertise of the USPTO.  In light of the relatively early stage of the proceedings and the absence of greater evidence that Plaintiff will be prejudiced in a way not sufficiently remedied by monetary compensation, it is concluded that a stay should issue.

The parties to this action may object to and seek review of this Order, within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.  Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

**SO ORDERED.**

Date: October 22, 2007         s/Steven D. Pepe
Ann Arbor, Michigan            United States Magistrate Judge


CERTIFICATE OF SERVICE

     I hereby certify that on <u>October 22, 2007</u> , I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>Dean W. Amburn, Patrice S. Arend, Shuaib Atique, Peter M. Falkenstein, Jeffrey G. Heuer, Kristopher K. Hulliberger, Patrick M. McCarthy, Jeffrey A. Sadowski</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>not applicable</u>

<u>s/ James P. Peltier</u>
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peliter@mied.uscourts.gov